UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
______________________________________________X
ANDREW ZHANG

Case No.:

Plaintiffs,

**COMPLAINT**

-against-

DIRECT MARKETING VENTURES, LLC

Defendant.
______________________________________________X

**FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)**

Plaintiff, by and through their undersigned counsel, alleges the following against Defendants, based upon personal knowledge, information, and belief, as well as upon investigation by their counsel.

**NATURE OF THE CASE**

1. This is an action for injunctive relief and damages pursuant to Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., for the Defendant's failure to provide a website that is accessible to individuals with disabilities. Plaintiff seeks to enforce their rights under the ADA and to ensure that Defendant complies with federal accessibility requirements.
2. Also, the Plaintiff is hereby asking for injunctive relief and damages pursuant to New York City Human Rights Law and New York State Human Rights Law.
3. Specifically, Plaintiff contends that Defendant's website is inaccessible to individuals with visual impairments, such as those using screen readers or other assistive technology, thus denying Plaintiff and others with disabilities equal access to the goods and services provided by Defendant via its website.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under a federal law — the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq.
5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").
6. This Court has personal jurisdiction over Defendant because Defendant operates and conducts business within the Southern District of New York and the alleged violations occurred in this District.
7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)–(2) and (c) because Defendant conducts substantial and continuous business in this District through its fully interactive commercial websites, which offers products and services to consumers throughout New York, including those residing in this District. According to abovementioned a substantial portion of the discriminatory conduct giving rise to this action, including the denial of equal access to Defendant's online goods and services, occurred within this District.

## PARTIES

8. Plaintiff is an individual residing in Manhattan, New York, and is a visually impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff has a disability as defined by the ADA, specifically Medically Diagnosed Legal Blindness (See Exhibit E).

9. Plaintiff is a person who is deeply invested in maintaining independence through life, which is why online shopping of his favorite items and brands is very important to him.

10. Defendant is a corporation with its principal place of business located in Massachusetts, address: 575 West Street, Suite 110, Mansfield, MA 02048. Defendant operates a website at https://shop.samsonite.com/ which offers goods including to individuals within the jurisdiction of this Court.

11. Defendant is a "public accommodation" and an "operator" of a public accommodation within the meaning of Title III of the ADA 42 U.S.C. § 12181(7), because it operates online retail platforms offering goods and services to the general public, including the visually impaired consumers like Plaintiff.

## FACTUAL ALLEGATIONS

12. On November 1st and November 3rd 2026, Plaintiff attempted to access Defendant's website to purchase the UPLIFT Hardside Large Spinner. Plaintiff enjoys travelling, especially abroad, and this luggage is exactly what the Plaintiff is looking to buy. Plaintiff was particularly interested in this product because it is lightweight and durable luggage, creating a special formulated shell that's both sleek and strong made from polycarbonate. The Plaintiff will not need to worry about lifting heavy luggage when travelling or getting this product off the baggage carousel when travelling abroad.

13. Plaintiff encountered numerous barriers to accessing Defendant's website due to its failure to comply with the accessibility requirements of the ADA, in accordance to accessibility standards provided through WCAG.

14. In that sense, the plaintiff engaged an expert witness who he informed about the factual issues in the specific case, additionally the expert witness consulted with an

Accessibility specialist, whose assistance led to the conclusion that in this particular case the website in question has not complied with ADA regulations.

15. These barriers included, but were not limited to:

- The Luggage submenu is not fully accessible as the "New Arrivals, Lightweight, Bestsellers, Shop By Collections, Shop All" menu options cannot be accessed by the plaintiff using a screen reader. (See Exhibit A).
- The Backpacks submenu is not fully accessible as the "Bestsellers, Shop By Collections, Accessories, Shop All" menu options cannot be accessed by the plaintiff using a screen reader. (See Exhibit B).
- The Bags submenu is not fully accessible as the "Bestsellers, Shop By Collections, Accessories, Shop All" cannot be accessed by the plaintiff using a screen reader. (See Exhibit C).
- The Accessories submenu is not fully accessible as the "Shop All" menu option cannot be accessed by the plaintiff using a screen reader. (See Exhibit D).

16. These barriers violate the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA, the recognized industry standard for digital accessibility. Plaintiff remains eager to return to the website once it is remediated, as its offers of the goods and potential gift items still align with his specific needs and preferences.

17. In this case, these barriers prevent Plaintiff, and individuals with similar disabilities, from fully accessing and using the website and its services. Plaintiff was thus denied equal access to the goods and services Defendant offers to the public via the website.

18. As a result of these accessibility issues, Plaintiff was unable to complete the desired transaction and suffered frustration, humiliation, and discrimination. Plaintiff continues to desire to use Defendant's website, and wishes to use it again, especially

due to it providing his favorite brands, but remains unable to do so due to its inaccessibility.

19. Plaintiff wishes and intends to immediately revisit the Website to purchase the UPLIFT Hardside Large Spinner from Defendant the moment that the access barriers are removed from the Website.

20. As maintaining independence in online shopping is very important to Plaintiff, unless the Defendant remedies these barriers, Plaintiff will continue to be excluded from the equal enjoyment of the goods and services offered to the consumers without mentioned visual impairments.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## VIOLATION OF TITLE III OF THE ADA

21. Plaintiff alleges and incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

22. Title III of the ADA requires that public accommodation, including websites, be fully accessible to individuals with disabilities. 42 U.S.C. § 12182(a).

23. Defendant's website is a public accommodation under the ADA, as it provides goods and services to the public.

24. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

25. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia: "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

26. Defendant has violated Title III of the ADA by failing to make its website accessible to individuals with disabilities, as already explained in this lawsuit The barriers on Defendant's website prevent Plaintiff from accessing its services and deny Plaintiff and others with disabilities equal access to the goods and services Defendant offers.

27. Defendant's actions have caused, and continue to cause, harm to Plaintiff by depriving them of equal access to Defendant's website, violating Plaintiff's rights under the ADA.

28. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

29. Plaintiff alleges and incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

30. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

31. Defendant is subject to the NYCHRL because it owns, operates, and controls the product pages that Plaintiff attempted to access, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1). This website functions as a provider of public accommodation under the NYCHRL because they offer goods, services, and consumer transactions to the general public, including residents of New York City. Defendant does not operate any brick-and-mortar retail stores relevant to this action; its discriminatory conduct arises solely from its operation of these online platforms.

32. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities or any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8- 107(15)(a).

33. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing. As such, Defendant discriminates and will continue to discriminate against Plaintiff and other persons of his status in the full and equal enjoyment of the products, services, facilities,

privileges, advantages, accommodations, and opportunities of the website in question and product pages under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing these unlawful practices, Plaintiff and visually impaired users will continue to suffer irreparable harm.

34. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination, as well as compensatory damages, as and civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502. Plaintiff is also entitled to reasonable attorneys' fees and costs.

35. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL")**

36. Plaintiff alleges and incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

37. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

38. Defendant, at all relevant times to this action, own and operate a place of public accommodation, the subject websites, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of

N.Y. Executive Law § 292(1). Plaintiff has visited the websites on a number of occasions and has encountered barriers to his access that exist.

39. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." 86. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

40. Defendant's actions therefore violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and others, by (i) owning and operating websites that are inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c). 88. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can

demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

41. Established guidelines exist for making websites accessible to disabled individuals, the International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

42. Defendant has intentionally and willfully discriminated against the violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

43. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and others with same disability, causing irreparable harm, therefore Plaintiff is entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue an injunction requiring Defendant to bring its website https://shop.samsonite.com/ into compliance with the accessibility standards set forth in Title III of the ADA;
2. Issue an injunction requiring Defendant to cease operations on the website https://shop.samsonite.com/ until the website is compliant with the accessibility standards set forth in Title III of the ADA;

3. Award damages to Plaintiff for the emotional distress and frustration caused by Defendant's discriminatory conduct in an amount to be determined by the Court;
4. Award Plaintiff's reasonable attorneys' fees, costs of litigation, and any other relief the Court deems just and proper.
5. Retain jurisdiction over this matter to ensure Defendant's compliance with the Court's orders and to address any future violations of the ADA.

Dated: Brooklyn, New York
November 5, 2026

Respectfully Submitted,

Mikhail Usher

Mikhail Usher, Esq.
USHER LAW GROUP, P.C.
1600 Sheepshead Bay Rd. Ste. 203
Brooklyn, New York 11235
(718) 484-7510
(718) 865-8566
musheresq@gmail.com